**This order is SIGNED.**

**Dated: December 4, 2018**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 15-27838 |
| DEBORAH MICHELLE KILEY | Chapter 7 |
| | Hon. Kevin R. Anderson |

## MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO DEBTOR'S AMENDED CLAIM OF EXEMPTION (DOCKET NO. 21)

The matter before the Court is the Objection to Debtor's Amended Claim of Exemption (hereinafter the "Trustee's Objection") filed by the Chapter 7 Trustee assigned to the above-captioned bankruptcy case, Mary M. Hunt.[1] The issues are: (1) what constitutes property of the estate when a divorce is filed pre-petition, but a divorce decree is entered post-petition; and (2) what portion, if any, of a divorce award in the value of the ex-spouse's ERISA-qualified retirement plan is excluded from property of the estate or is otherwise exempt? The events relevant to a determination of this matter illustrate the myriad factual permutations at the intersection of bankruptcy and divorce law and confirm that timing is everything when determining property of

---

[1] Docket No. 21.

the estate. Both bankruptcy and divorce attorneys need to carefully consider these timing issues when advising clients.

Some years before filing for bankruptcy, Deborah Kiley (the "Debtor") sued for divorce. A day before her bankruptcy filing, the Debtor and her ex-husband stipulated in the divorce proceeding that the Debtor would receive 100% of the value of his retirement account. Shortly after the bankruptcy filing, the Utah divorce court memorialized the award and entered a Qualified Domestic Relations Order naming the Debtor as an "Alternate Payee" of the retirement account.[2] The Debtor claims her interest in the retirement account is excluded from property of the estate under 11 U.S.C. § 541(c)(2),[3] or in the alternative, that it is exempt under U.C.A. § 78B-5-505(1)(a)(xv).[4] The Debtor also asserts that because approximately half of the award was for past-due alimony and child support, this amount is exempt under U.C.A. § 78B-5-505(1)(a)(vi) and (vii).

The Court held an evidentiary hearing on the Trustee's Objection on January 23, 2017 and permitted the parties to submit supplemental briefs no later than February 6, 2017. Thereafter, the Court took the matter under advisement.

---

[2] An "alternate payee" is a term of art defined under the Employee Retirement Income Security Act or "ERISA" at 26 U.S.C. § 414(p)(8) as "any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant."

[3] All subsequent references to the United States Code are to Title 11 unless otherwise specified.

[4] Docket No. 47. U.C.A. § 78B-5-505(1)(a)(xv) provides: "An individual is entitled to exemption of . . . the interest of or any money or other assets payable to an alternate payee under a qualified domestic relations order as those terms are defined in Section 414(p), Internal Revenue Code."

2

On June 7, 2017, the Court entered an Order Certifying State Law Questions to Utah State Supreme Court.[5] The Utah Supreme Court issued an order granting the certification on July 5, 2017.[6] On August 14, 2018 the Utah Supreme Court entered an Opinion revoking certification and on September 24, 2018 entered a Remittitur.[7]

The Court held a status conference on October 2, 2018. Mary Margaret Hunt appeared in her capacity as Chapter 7 Trustee and Michael F. Thomson appeared as counsel for the Trustee. Olivia Rossi appeared on behalf of the Debtor. At the conclusion of the status conference, the Court took the matter under advisement.

The Court now issues this Memorandum Decision which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Fed. R. Bankr. P. 9014 and 7052.[8]

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5] Docket No. 62.

[6] Docket No. 66.

[7] Docket No. 69.

[8] Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.

3

## II.   FACTS[9]

### A.   The Pre-Petition Divorce Proceedings

On February 7, 2012, the Debtor, Deborah Michelle Marrott (n/k/a Kiley), filed a petition for divorce against Jarod R. Marrott in the Third Judicial Court for Salt Lake County, State of Utah (the "Divorce Court").[10] The divorce proceeding was later bifurcated pending a resolution of issues related in part to the distribution of marital property.[11] At the time of the divorce filing, Mr. Marrott had a retirement plan through his employer (the "Retirement Plan").[12]

Pursuant to previous orders in the divorce proceeding, Mr. Marrott was required to pay the Debtor support payments of $7,199 per month ($4,273 in child support and $2,926 in alimony).[13] Mr. Marrott became delinquent on both alimony and child support payments.[14] The Divorce Court issued an Order to Show Cause and set a "Mediated Settlement Conference" for August 20, 2015.[15]

On August 20, 2015, the settlement conference was held, and a divorce court commissioner approved a stipulation between the Debtor and Mr. Marrott (the "Mediated Stipulation").[16] The Divorce Court minute entry states that Mr. Marrott "will pay $225,000.00 from his retirement fund

---

[9] The Trustee and the Debtor submitted a Pretrial Order that contained uncontroverted facts as stipulated by Counsel for the parties. The Court entered the Pretrial Order on January 19, 2017 (Docket No. 57), and to the extent they are not expressly stated, the Court incorporates those uncontroverted facts herein.

[10] Docket No. 57, para. 4(a).

[11] *Id.* at para. 4(b).

[12] *Id.* at para. 4(c).

[13] Debtor's Exh. 2, p. 8, lines 2, 11.

[14] Trustee's Exh. 2, pg. 3, line 11 ("In lieu of the agreements made herein, the Petitioner waives any and all support arrearages up and through August 2015.").

[15] Debtor's Exh. 2, pp. 15-16.

[16] Docket No. 57, para. 4(d).

4

to [Ms. Kiley] for a full and total satisfaction of past arrears and owing's [sic] through August 21, 2015."[17]

### B. Post-Petition Divorce Events

On August 21, 2015, the day following the divorce settlement conference, the Debtor filed this Chapter 7 petition for relief.[18] On the petition date, Mr. Marrott was living, and the funds remained in the Retirement Plan.[19] At all relevant times through the petition date, the Debtor was the primary, survivor beneficiary of Mr. Marrott's Retirement Plan.[20]

On September 23, 2015, approximately one month after the petition date, the Divorce Court entered Findings of Fact and Conclusions of Law ("Findings & Conclusions")[21] and a Decree of Divorce ("Divorce Decree").[22] The Findings & Conclusions, under the heading "Division of Assets and Liabilities," awarded the Debtor the following (the "Divorce Award"):

> **401 K, Pension, Retirement Plans.** The Respondent [Jarod Marrott] has acquired certain retirement accounts. He represents that the accounts total of $225,142. The Petitioner [Debtor] is awarded all of the value in any and all of the Respondent's retirement accounts . . . . The Respondent shall pay for any costs associated with the preparation of a QDRO (no more than $500) or transfer of the retirement funds into Petitioner's possession. If the plan administrator(s) will not release the total amount of the retirement account due to the loans, the Respondent shall pay to the Petitioner $200 per month until the loan amounts are paid in full.[23]

---

[17] Docket No. 57, at para. 4(d); Debtor's Exh. 2, p. 17.

[18] Docket No. 1.

[19] Docket No. 57, paras. 4(k), (l).

[20] Debtor's Exh. 1. The Trustee and the Debtor stipulated on the record at the January 23, 2017 hearing that Debtor was the principal beneficiary of the former husband's retirement account up to and including the Petition Date and that Debtor's former husband was not deceased. January 23, 2017 Hearing Recording, Docket No. 59, 9:09:31 to 9:09:57 a m.

[21] Docket No. 57, para. 4(e).

[22] *Id.* para. 4(f).

[23] Trustee's Exh. 1, para. 23; Trustee's Exh. 2, para. 23.

5

On October 7, 2015, the Trustee conducted the first meeting of creditors under 11 U.S.C. § 341 where she directed the Debtor to produce a "copy of ruling for debtor's claim to ex-husband's 401k" and to amend her bankruptcy schedules to "disclose claim to ex-husband's 401k."[24]

On December 4, 2015, the Divorce Court entered a Qualified Domestic Relations Order (the "QDRO").[25] The QDRO designated the Debtor as the Alternate Payee of the Retirement Plan and Mr. Marrott as the Participant.[26] With respect to the "Time and Manner of Payment" the QDRO provides:

> 11. The Plan shall pay, in lump sum, the amount designated in paragraph 7 of this QDRO, 100% of the Participant's account, less the value of any outstanding loans, as of the date of segregation. The Participant shall assume any and all outstanding loans on the account. The Plan shall pay this amount as soon as administratively feasible.
>
> 12. This QDRO does not require the Alternate Payee's consent to the distribution, and the Plan may distribute the amount described in paragraph 11 of this Part IV without obtaining any further consent from the Alternate Payee.[27]

A week later, the Retirement Plan administrator certified that the QDRO complied with ERISA and did not violate the Retirement Plan's anti-alienation provisions.[28]

The Debtor's original bankruptcy schedules did not list the pending divorce proceedings.[29] The Debtor amended Schedules B and C several times, and ultimately disclosed an interest in a

---

[24] Trustee's Exh. 6.

[25] Trustee's Exh. 3.

[26] *Id.* at para. 4.

[27] *Id.* at paras. 11-12.

[28] Trustee's Exh. 4; 29 U.S.C. § 1056(d)(3)(G); 26 U.S.C. § 414(p).

[29] Docket No. 2; Trustee's Exh. 5. The Debtor's Original Schedules B and C list an interest in "Retirement: 401K" in the amount of $1,129.00. It is unclear if this disclosure related to the ex-husband's Retirement Plan.

6

"Retirement: 401K" in the amount of $225,142.00.[30] The Debtor also claimed an exemption in the amount of $225,142.00 in the "Retirement 401K" pursuant to U.C.A. § 78B-5-505(1)(a)(xv), which references the interest of alternate payees under a QDRO.[31]

The Debtor's amended Schedule B also lists an interest in "Child Support arrears as of date of filing the petition: $60,478.07" and "Alimony arrears as of the date of filing the petition: $53,299.71."[32] On amended Schedule C, the Debtor claimed an exemption in these amounts under U.C.A. § 78B-5-505(1)(a)(vi) and (vii).[33] The Trustee and the Debtor stipulated on the record at the January 23, 2017 hearing that $113,777.78 of the $225,142.00 claimed on Schedule B as the "Retirement: 401K" is attributable to past due child support and alimony.[34] However, the Trustee has objected to the Debtor's exemption in alimony because U.C.A. § 78B-5-505(vii) only allows an exemption "to the extent reasonably necessary for the support of the individual and the individual's dependents."[35] The Trustee asserts she will need to conduct additional discovery as to what amounts are reasonable under the Debtor's circumstances.

---

[30] Docket No. 47.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] Docket No. 60, para. 3. The minute entries from the mediated settlement conference indicate that a significant portion of the award in the Retirement Plan related to past due family Support Payments. The issue was discussed at the Bankruptcy Court's January 23, 2017 hearing, and the parties stipulated on the record that of the $225,142 listed in the Divorce Decree, $113,777.78 was for delinquent alimony and child support.

[35] Docket No. 51.

## III. ANALYSIS

### A. Summary of the Issues

In the broadest terms, the issue is what, if any, portion of the Divorce Award is property of the bankruptcy estate that must be turned over to the Trustee for distribution to creditors. The answer to this question involves the following discrete issues;

1. On the petition date, or within 180 days thereafter, did the Debtor have an interest in the Retirement Plan that constituted property of the estate under § 541?

2. If the Debtor had an interest in the Retirement Plan on the petition date, did its anti-alienation provisions exclude all or a part of that interest from property of the estate under § 541(c)(2)?

3. If the Debtor had an interest in the Retirement Plan on the petition date, is that interest exempt pursuant to the resulting, post-petition QDRO under U.C.A. § 78B-5-505(1)(a)(xv)?

4. Is the Debtor's interest in the Divorce Award for pre-petition alimony and child support exempt under U.C.A. § 78B-5-505(1)(a)(vi) and (vii)?

### B. Property of the Estate

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[36] A debtor's property interests "are created and defined by state law."[37] What constitutes property of the estate under § 541 is broad, consistent with the "congressional goal of encouraging reorganizations and Congress' choice of methods to protect

---

[36] § 541(a)(1).
[37] *Butner v. United States*, 440 U.S. 48, 55 (1979).

8

secured creditors."[38] Accordingly, "[e]ven a contingent, reversionary interest is included in a debtor's estate under § 541."[39]

Determining what is property of the bankruptcy estate in this case is complicated due to the following timeline: (1) more than three years before her bankruptcy filing, the Debtor sued for divorce; (2) the day before her bankruptcy filing, the parties agreed on the record, after a mediated divorce settlement conference, that the Debtor was entitled to 100% of the value of her ex-husband's Retirement Plan in the estimated amount of $225,000, with $113,777.78 of this amount constituting past-due alimony and child support; (4) a month after the bankruptcy filing, the Divorce Court entered the Divorce Decree memorializing the Divorce Award; (5) three months after the bankruptcy filing, the Divorce Court entered a QDRO naming the Debtor as payee; and (6) to date, the funds remain in the Retirement Plan.[40]

For the following reasons, the Court finds under Utah law, ERISA,[41] and the Bankruptcy Code that the Debtor held the following interests in the Retirement Plan as of the petition date: (1) an interest in the Retirement Plan as a primary survivor beneficiary with rights of survivorship upon the death of her ex-husband; (2) an interest in the Support Payments as a pre-petition property interest; and (3) an equitable interest in the Retirement Plan as marital property that became choate upon the entry of the Divorce Decree. Further, within 180 days of her bankruptcy filing, the Debtor

---

[38] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983).

[39] *Redmond v. Lentz & Clark, P.A. (In re Wagers)*, 355 B.R. 268, 276 (B.A.P. 10th Cir. 2006).

[40] As of March 21, 2016, the funds were held by the plan administrator in a separate account in the Debtor's name as the Alternate Payee. Trustee's Exh. 18. *See also* 26 U.S.C. § 414(p)(7)(A) which requires the plan administrator to segregate the alternate payee's share of plan funds into a separate account pending a distribution under the QDRO.

[41] 29 U.S.C. §§ 1001-1461.

acquired, or became entitled to acquire, a property settlement pursuant to a final divorce decree. Thus, under § 541(a)(5)(B), that property settlement became property of the estate.

### C. Is the Debtor's Interest in the Retirement Plan as a Survivor Beneficiary Property of the Estate?

#### 1. On the Petition Date, the Debtor held a Beneficial Interest in the Retirement Plan as a Survivor Beneficiary.

The Trustee has not challenged the Debtor's assertion that the Retirement Plan is ERISA qualified. The Court has reviewed the evidence, including the QDRO Determination Checklist wherein the Retirement Plan administrator certified the Debtor's QDRO as a qualified domestic relations order as defined by 29 U.S.C. § 1056(d)(3) and 26 U.S.C. § 414(p).[42] Based on this evidence, the Court finds that the Retirement Plan and the QDRO are ERISA qualified. It is also undisputed that through the petition date, the Debtor was the principal, survivor beneficiary of her ex-husband's Retirement Plan.[43] Therefore the Court finds that on the petition date, the Debtor held an interest in the Retirement Plan as a survivor beneficiary.

#### 2. The Debtor's Beneficial Interest in the Retirement Plan as a Survivor Beneficiary is Excluded from the Estate Pursuant to § 541(c)(2).

The Debtor argues that the Retirement Plan is not property of the estate because of its transfer restrictions. Section 541(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." In this case, the "applicable nonbankruptcy law" is ERISA,[44]

---

[42] Trustee's Exh. 4.

[43] January 23, 2017 Hearing Recording, Docket No. 59, 9:09:31 to 9:09:57 a m.

[44] *Patterson v. Shumate*, 504 U.S. 753, 758 (1992); *In re West*, 507 B.R. 252, 255-56 (Bankr. N.D. Ill. 2014) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). *See also Peters v. Wise (In re Wise)*, 346 F.3d 1239, 1242 (10th Cir.

and the Supreme Court has held that by definition[45] an ERISA-qualified plan contains the requisite restriction on transfer to exclude it from property of the bankruptcy estate.[46]

As a result, the Court finds that as of the petition date, the Debtor's interest in the Retirement Plan as a survivor beneficiary was subject to ERISA's anti-alienation provisions that exclude it from property of the estate under § 541(c)(2).

### D. On the Petition Date, Did the Debtor Also Hold an Equitable Interest in the Retirement Plan as Marital Property?

However, this is not the end of the analysis, because the Debtor also held an interest in the Retirement Plan as marital property. Property interests in bankruptcy "are created and defined by state law."[47] The Utah divorce statute does not define marital property,[48] but its delineations are established by Utah case law. These decisions hold that "regardless of whose name property is titled in, if the property was acquired during the marriage by the joint efforts of the parties, the

---

2003) (once property rights are determined by a state divorce court, federal law applies to establish the extent to which such property interest is property of the bankruptcy estate).

[45] 29 U.S.C. § 1056(d)(1): "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

[46] *Patterson v. Shumate,* 504 U.S. 753, 749 (1992) (holding that the anti-alienation provisions of a retirement plan exclude it from property of the estate under § 541(c)(2)); *see also Kennedy v. Plan Adm'r for DuPont Savs. & Inv. Plan*, 555 U.S. 285 (2009) (A plan participant's interest in an ERISA-qualified plan is not affected by a divorce decree, and a third person can only assert an interest in such plan as a survivor beneficiary upon the death of the plan participant, or as an alternate payee under a QDRO); *Nelson v. Ramette (In re Nelson)*, 322 F.3d 541 (8th Cir. 2003) (debtor's pre-petition QDRO interest in ERISA-qualified plan, with funds not disbursed as of petition date, was excluded from bankruptcy estate under § 541(c)(2)).

[47] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[48] *West v. Christensen*, 576 B.R. 223, 232 (D. Utah 2017) (citing to U.C.A. § 30-3-5(1) and holding that "[t]he nature of property interests owned by spouses is not defined in Utah divorce statutes, although Utah divorce statutes do establish the court's authority to make an equitable division of any property interests owned by the parties to a divorce.").

11

property is presumed to be owned by both of them from the time of its acquisition."[49] When dividing marital property, the divorce court starts with the presumption that each spouse holds a one-half interest therein.[50] The court then considers the parties' circumstances and proceeds to "effect an equitable distribution in light of those circumstances."[51] Marital property includes retirement benefits that accrue to one spouse during a marriage.[52]

Turning to the facts, the Retirement Plan Enrollment Form and the Divorce Court's Findings & Conclusions establish that Mr. Marrott enrolled in the Retirement Plan while the parties were married.[53] Thus, under Utah law the Retirement Plan was marital property. Further, upon filing for divorce, the Debtor was presumed to have a one-half, equitable interest in the Retirement Plan even though she was not a named participant. Therefore, the Court finds that on the petition date, the Debtor's presumed, one-half equitable interest in the value of the Retirement Plan was property of the bankruptcy estate, but subject to a final allocation by the Divorce Court.[54]

---

[49] *West*, 576 B.R. at 232; *see also Preston v. Preston*, 646 P.2d 705, 706 (Utah 1982); *Georgedes v. Georgedes*, 627 P.2d 44 (Utah 1981); *Jesperson v. Jesperson*, 610 P.2d 326 (Utah 1980); *Humphreys v. Humphreys*, 520 P.2d 193 (Utah 1974).

[50] *Burt v. Burt*, 799 P.2d 1166, 1172 (Utah Ct. App. 1990) ("Each party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property."); *accord West*, 576 B.R. at 233.

[51] *Id.*

[52] *Woodward v. Woodward*, 656 P.2d 431, 432-33 (Utah 1982) (in divorce settlement, wife entitled to equitable distribution of husband's retirement plan).

[53] The Retirement Plan Enrollment Form is signed June 28, 2005 by Mr. Marrott and the State Court's Supplemental Findings of Fact indicate that the parties "are the natural parents of two (2) minor children born as issue of their marriage" in 1999 and 2001. Trustee's Exh. 1, ¶1.

[54] While Utah does not have a case directly on point, other jurisdictions examining the issue of a spouse's interest in marital property upon filing for divorce support this Court's conclusion. *See e.g., Gertz v. Warner (In re Warner)*, 570 B.R. 582 (Bankr. N.D. Ohio 2017) ("[U]pon a spouse filing for divorce, and until a formal distribution of the parties' property is made, the interest of the spouse acquires in the other's separately titled property is strictly contingent, therefore subject to later divestment if the state court with jurisdiction over the parties' property does not enter an order awarding the property to a non-title holding spouse."); *see also Ford v. Skorich (In re Skorich)*, 482 F.3d 21 (1st Cir. 2007) (debtor's equitable interest in marital property vanished once divorce court, after relief from stay, awarded non-bankrupt spouse a 100% interest in the asset at issue).

12

### E. Did the Divorce Award Include a Property Settlement?

The next issue is whether the Divorce Award was for support or as a property settlement. If a property settlement, the Divorce Award would be property of the estate under § 541(a)(5)(B) because it was acquired within 180 days of the petition date.[55] The Trustee argues that pursuant to the language of the pre-petition settlement conference, the Divorce Court's post-petition orders and findings, and the QDRO that the Debtor's Divorce Award of the value of the Retirement Plan was a property settlement.[56] Under the heading of "Division of Assets & Liabilities," and the subheading of "401k , Pension Retirement Plans," the Divorce Court awarded the Debtor "all of the value in any and all" of the ex-husband's retirement accounts. The Divorce Court went on to find that the value of the Retirement Plan was $225,142. However, the parties stipulated that the Divorce Award included $113,777.78 in Support Payments.[57] Thus, the headings and language of the Divorce Decree indicates that, other than the Support Payments, the Divorce Award was intended as a property settlement.

Furthermore, the Divorce Decree provided that Mr. Marrott could pay the costs for "the preparation of a QDRO (no more than $500) **or** transfer of the retirement funds into Petitioner's possession."[58] Shortly after entry of the Divorce Decree, the Debtor's divorce attorney submitted

---

[55] *Peters v. Wise (In re Wise)*, 346 F.3d 1239, 1241 (10th Cir. 2003) (discussing that a divorce property settlement created within 180-days of a bankruptcy filing is an exception to the general rule that property acquired post-petition is not included in the bankruptcy estate).

[56] The Court notes that the prepetition oral stipulation at the settlement conference was only advisory and not binding on the Divorce Court. *See Colman v. Colman*, 743 P.2d 782 (Utah Ct. App. 1987) (Holding that a stipulation as to property rights in a divorce action are advisory and not necessarily binding on the trial court); *see also Jackson v. Jackson*, 617 P.2d 338 (Utah 1980); *Klein v. Klein*, 544 P.2d 472 (Utah 1975); *Johnson v. Johnson*, 439 P.2d 843 (Utah 1968).

[57] Docket No. 60.

[58] Trustee's Exh. 1, para. 23.

13

a QDRO, and on December 5, 2015 the Divorce Court entered the QDRO with the following language: "The [Retirement] Plan shall pay, **in lump sum**, the amount designated in paragraph 7 of this QDRO, 100% of the Participant's account, less the value of any outstanding loans, as of the date of segregation."[59] The phrase "lump sum" indicates that the Debtor elected to receive the value of the Retirement Plan in a single, cash payment. The QDRO also provides: (1) "The plan shall pay this amount as soon as administratively feasible"; (2) "This QDRO does not require the Alternate Payee's consent to the distribution, and the Plan may distribute the amount described . . . [herein] without obtaining any further consent from the Alternate Payee"; and (3) "The Alternate Payee assumes sole responsibility for the tax consequences of the distribution under this QDRO." All of these provisions suggest that the intent was to make a lump sum, cash distribution to the Debtor equal to the value of the Retirement Plan.

There is nothing in the divorce documents or the QDRO to suggest that any portion of the Retirement Plan was to be rolled over into an ERISA plan in the Debtor's name. Further, there is no evidence that the Debtor intended to roll the funds in the Retirement Plan into an ERISA plan in her name.

As a result, the Court finds that other than the Support Payments of $113,777.78, the balance of the Divorce Award was a property settlement (the "Property Settlement"). Further, because the Debtor acquired, or became entitled to acquire, the Property Settlement within 180 days of her bankruptcy filing, it became property of the bankruptcy estate under § 541(a)(5)(B).

---

[59] Trustee's Exh. 3 (emphasis added). The Court notes that the QDRO does not state the amount of $225,142, as is designated in the Divorce Decree. Rather, the QDRO lists the Debtor's portion as "100% of the Participant's account, less the value of any outstanding loans, as of the date of segregation." Trustee's Exh. 18 suggests that the amount in the Retirement Plan at the time of the QDRO was $194,164.62. It may require a subsequent evidentiary hearing to determine the precise amount in the Retirement Plan and the amount that should be considered property of the estate.

### F. Is the Debtor's Interest in the Retirement Plan Through the Post-Petition QDRO Exempt Under U.C.A. § 78B-5-505(1)(a)(xv)?

Having found that the Property Settlement is property of the estate, the Court next considers the Debtor's claimed exemption therein under U.C.A. § 78B-5-505(1)(a)(xv).[60] This section exempts "the interest of or any money or other assets payable to an Alternate Payee under a qualified domestic relations order as those terms are defined in Section 414(p), Internal Revenue Code."[61] The parties make statutory interpretation arguments as to whether this language applies to the funds in the hand of the payor or the payee. However, the Court need not rule on these arguments.

Section 522(b)(3)(A) allows exemptions under state law "applicable on the date of the filing of the petition."[62] The parties agree that on the petition date, the Debtor was not an "Alternate Payee under a QDRO."[63] It was only after the bankruptcy filing that the Divorce Court entered the QDRO defining the Debtor as Alternate Payee.[64] Therefore, because the Debtor was not an

---

[60] The Court notes that the Trustee's Reply to the Debtor's Response to Trustee's Objection to Claimed Exemption (Docket No. 24) indicates that the Trustee "reserves all rights" with respect to whether the former husband's retirement plan is one that qualifies under I.R.C. § 414(p). Docket No. 24, Trustee's Reply. The Trustee's Reply indicates that the "Trustee has never been provided documentation as to the Debtor's former spouse's retirement plan and the Debtors does not discuss this in her papers." The Court is unclear what the Trustee's "reservation of rights" on this point is meant to accomplish. The Trustee objected to the Debtor's exemption under U.C.A. § 78B-5-505(1)(a)(xv) and now has the burden to establish that the exemption is not properly claimed. For this reason, the Court declines to accept the Trustee's reservation of rights on whether the Retirement Plan is a plan as defined under I.R.C. § 414(p), and instead will consider the Trustee's primary argument – whether the exemption applies to assets in the hands of the payee or the payor.

[61] U.C.A. § 78B-5-505(1)(a)(xv).

[62] *In re Parks*, 255 B.R. 768, 772 n.3 (Bankr. D. Utah 2000) (citing *Marcus v. Zeman (In re Marcus)*, 1 F.3d 1050 (10th Cir. 1993)); *see also Williamson v. Hall (In re Hall)*, 441 B.R. 680, 685 (10th Cir. BAP 2009); *Robinson v. Brown (In re Robinson)*, 295 B.R. 147, 153 (B.A.P. 10th Cir. 2003).

[63] U.C.A. § 78B-5-505(1)(a)(xv).

[64] Trustee's Exh. 3.

alternate payee on the petition date, the Court finds that she did not qualify for an exemption under U.C.A. § 78B-5-505(1)(a)(xv).

### G. Can the Debtor Exempt that Portion of the Divorce Award Consisting of Past-Due Alimony and Child Support?

The Debtor's amended Schedule B states that on the petition date, the Debtor was owed $60,478.07 for child support arrears and $53,299.71 for alimony arrears for a total domestic support claim of $113,777.78.[65] The Debtor's amended Schedule C then claims these amounts as exempt under U.C.A. 78B-5-505(1)(a)(vi) and (vii).[66]

The Trustee objected to these exemptions, saying she had not verified the amounts allocated to alimony and child support and because the exemption for alimony is limited "to the extent reasonably necessary for the support of the individual and the individual's dependents."[67] However, the Trustee has since stipulated to these amounts as past-due alimony and child support.[68] Nonetheless, the Trustee asserts she needs to do additional discovery to determine what amount of alimony qualified as reasonably necessary for the Debtor's support. The Court agrees that such discovery is appropriate before ruling on the Debtor's claimed exemption for $53,299.71 in pre-petition alimony.

However, with the stipulation as to the pre-petition child support, the Court finds that the Debtor has an allowed exemption of $60,478.07 in the Retirement Plan proceeds as child support under U.C.A. 78B-5-505(1)(a)(vi).

---

[65] Docket No. 47.
[66] *Id.*
[67] Docket No. 51.
[68] Docket No. 60 at ¶ 3.

### H.     Effect of the Automatic Stay on the Post-Petition Divorce Court Orders

Normally, the bankruptcy filing would stay a divorce court's post-petition division of marital property, and the Chapter 7 trustee would make a business decision whether to intervene in the divorce proceedings to assert the estate's interest in marital property.[69] However, in this case, the pending divorce proceeding was not disclosed in time for the Trustee to take such action.

Further, the Trustee has not challenged the validity of the Divorce Court's post-petition orders under § 362(b)(2)(A)(iv).[70] The Court understands the Trustee's position to be that she does not object to the Divorce Court's post-petition award of the Property Settlement and Support Payments to the Debtor.[71] For purposes of this opinion, the Court will therefore deem the Divorce Court's post-petition orders to be valid, binding, and controlling as to the disposition of the Trustee's motion.

If a party later seeks to lift or annul the automatic stay with respect to the Divorce Court's post-petition orders, this Court will consider such arguments at that time. The Court notes that the delay in bringing such a motion (the Divorce Decree has been entered for over 3 years); the potential for serious confusion if the Divorce Decree is voided; and the interests of judicial

---

[69] *See e.g., In re Zachmann*, 2013 Bankr. LEXIS 1176 (Bankr. N.D. Ill. 2013) (Chapter 7 trustee intervened in pending divorce proceeding and participated in thirteen-day trial to determine estate's interest in marital property).

[70] This section provides that the filing of a bankruptcy petition does not operate as a stay as to the continuation of a civil proceeding "for the dissolution of a marriage, except to the extent such seeks to determine the division of property that is property of estate." *See also Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371 (10th Cir. 1990); *Meeks v. Nalley (In re Nalley)*, 507 B.R. 411 (Bankr. S.D. Ga. 2014) (consent divorce decree that awarded property to debtor's former spouse was void); *In re Kallabat*, 482 B.R. 563 (Bankr. E.D. Mich. 2012) (automatic stay voided divorce court findings that determined debtor's property interests); *Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 456 B.R. 455 (Bankr. D. Idaho 2011) (post-petition divorce decree was void to the extent it determined debtor's property interests).

[71] October 2, 2018 Hearing Recording, Docket No. 72, at 11:09:39 a.m. to 11:10:15 a.m.

17

economy would weigh heavily in favor of annulling the stay so that the Divorce Decree remained valid and binding.[72]

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the Debtor held the following interests in the Retirement Plan as of the petition date: (1) the status of a primary survivor beneficiary under the Retirement Plan; (2) a one-half, equitable interest in the Retirement Plan as marital property, but subject to a final allocation by the Divorce Court; and (3) an interest in the Retirement Plan for past-due alimony and child support in the amount of $113,777.78.

As to the Debtor's interest in the Retirement Plan as primary survivor beneficiary, the Court finds that interest is excluded from property of the estate under § 541(c)(2) and *Patterson v. Shumate*.[73]

As to the Debtor's interest in the Retirement Plan as marital property, the Divorce Court made a final allocation of marital property by awarding the Debtor the value of the Retirement Plan, with $113,777.78 of that amount being for past-due alimony and child support. While that was done post-petition, the Trustee has not objected to the terms of the Divorce Decree, and the Court finds that it thus fixed the Debtor's interest in marital property. Alternatively, the Debtor became entitled to the Property Settlement (the difference between the value of the Retirement Plan less the Support Payments) within 180 days of the petition date. Thus, the Property Settlement amount also became property of the estate under § 541(a)(5)(B).

---

[72] *See In re Eastlick*, 349 B.R. 216, 228 (Bankr. D. Idaho 2004) (Determining that the automatic stay should be annulled to permit post-petition divorce decree to stand and render movant's stay violations motion moot.)

[73] *Patterson v. Shumate*, 504 U.S. 753 (1992) (holding that the anti-alienation provisions of a retirement plan exclude it from property of the estate under § 541(c)(2)).

As to the QDRO, the Court sustains the Trustee's objection to the Debtor's claimed exemption under U.C.A. § 78B-5-505(1)(a)(xv) because on the petition date, the Debtor was not an "alternate payee" of a QDRO.

As to the Debtor's interest in the Support Payments, the Court allows the Debtor's claimed exemption for child support in the amount of $60,478.07. As to the exemption of $53,299.71 for alimony, the Debtor must establish what portion of this amount is reasonably necessary for her support and support of any dependents.[74] Thus, a final ruling on the Trustee's objection to the exemption in alimony is a matter for another day.

Accordingly, the Court directs that of the funds presently held in the Retirement Plan, the sum of $60,478.07 shall be released and delivered to the Debtor in full satisfaction of her child support exemption. The sum of $53,299.71, representing the Debtor's alimony award, shall likewise be released and delivered to the Trustee to hold in trust pending further order of the Court. The balance of funds in the Retirement Plan shall be released and delivered to the Trustee for distribution to creditors. The Trustee may seek such additional orders from the Court as is necessary to accomplish the release of the funds. The Court will enter a separate order consistent with this Memorandum Decision.

---

[74] See U.C.A. § 78B-5-505(1)(a)(vii).

As to the QDRO, the Court sustains the Trustee's objection to the Debtor's claimed exemption under U.C.A. § 78B-5-505(1)(a)(xv) because on the petition date, the Debtor was not an "alternate payee" of a QDRO.

As to the Debtor's interest in the Support Payments, the Court allows the Debtor's claimed exemption for child support in the amount of $60,478.07. As to the exemption of $53,299.71 for alimony, the Debtor must establish what portion of this amount is reasonably necessary for her support and support of any dependents.[74] Thus, a final ruling on the Trustee's objection to the exemption in alimony is a matter for another day.

Accordingly, the Court directs that of the funds presently held in the Retirement Plan, the sum of $60,478.07 shall be released and delivered to the Debtor in full satisfaction of her child support exemption. The sum of $53,299.71, representing the Debtor's alimony award, shall likewise be released and delivered to the Trustee to hold in trust pending further order of the Court. The balance of funds in the Retirement Plan shall be released and delivered to the Trustee for distribution to creditors. The Trustee may seek such additional orders from the Court as is necessary to accomplish the release of the funds. The Court will enter a separate order consistent with this Memorandum Decision.

---

[74] See U.C.A. § 78B-5-505(1)(a)(vii).

\_\_\_\_ooo0ooo\_\_\_\_\_

## **DESIGNATION OF PARTIES TO BE SERVED**

Service of the foregoing **MEMORANDUM DECISION** will be provided to the parties and in the manner designated below:

**By Electronic Service:**

- Megan K Baker baker.megan@dorsey.com, long.candy@dorsey.com
- Mary Margaret Hunt hunt.peggy@dorsey.com, long.candy@dorsey.com
- Mary M. Hunt tr hunttrustee@dorsey.com, hunt.peggy@dorsey.com;UT18@ecfcbis.com
- Michael F. Thomson thomson.michael@dorsey.com, montoya.michelle@dorsey.com;ventrello.ashley@dorsey.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Matthew Wadsworth wadsworth@arnoldwadsworth.com

**By U.S. Mail:**

None.